Filed 10/30/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JAIME CESAR PEREZ-TINOCO,<br><br>    Defendant and Respondent. | G064424, G064859<br><br>(Super. Ct. Nos. M-21029, 05NF1364)<br><br>O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Andre Manssourian, Judge. Affirmed. Request for judicial notice denied.

Todd Spitzer, District Attorney and John R. Maxfield, Deputy District Attorney, for Plaintiff and Appellant.

Derek Bercher, Alternate Defender and Marketa Sims, Deputy Alternate Defender, for Defendant and Respondent.

\*          \*          \*

In September 2006, a jury convicted defendant Jaime Cesar Perez-Tinoco (Perez) of first degree premeditated murder, attempted murder with a premeditation allegation, and a substantive gang offense. The jury found true gang and gang-related firearm allegations (Perez was not the shooter). The trial court imposed a total sentence of 50 years to life.

In May 2024, the trial court granted Perez a petition for a writ of habeas corpus. (See *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*).) The court's habeas order vacated Perez's premeditated murder and attempted murder convictions. The trial court gave the district attorney (the People) the option of (1) accepting a reduction to second degree murder and attempted murder without premeditation, or (2) retrying Perez on the first degree murder charge and the premediated allegation as to the attempted murder charge.

In June 2024, the trial court clarified its earlier habeas corpus order and now additionally vacated the gang offense, and the gang-related allegations based on recent statutory changes. (See Pen. Code, § 186.22.)[1] In addition to its earlier orders, the court now also gave the People the option of accepting a dismissal, or retrying Perez as to the gang offense, the gang allegations, and the gang-related firearm allegations.

In July 2024, the People filed an appeal from the trial court's habeas orders (G064424). The People argue that the court erred because *Chiu* relief is no longer permitted after the Legislature's enactment of section 1172.6. The People also argue that the court was not obligated to vacate the gang offense, gang allegations, and firearm allegations.

In October 2024, while the People's appeal was pending, the trial

---

[1] Further undesignated statutory references are to the Penal Code. We shall also generally omit the word "subdivision" or its abbreviation.

court granted Perez a partial dismissal motion. The court's ruling was based on the People's failure to retry Perez within 60 days of the court's habeas orders, and its failure to request a stay of the proceedings in the trial court. (See §§ 1382, 1506.) The court dismissed the first degree murder charge, the premeditated attempted murder charge, and the gang-related allegations. What remained was the second degree murder conviction and the attempted murder conviction (without premeditation).

In November 2024, the People filed a second appeal from the trial court's dismissal orders (G064859). The People concede they did not bring the matter to retrial within 60 days, and they did not request a stay of the proceedings in the trial court, but they argue there was no speedy trial violation because the court improperly granted habeas corpus relief.

This court consolidated the two appeals (G064424 & G064859). We will make the following findings in this consolidated opinion:

(A) Section 1172.6 did not prevent the trial court from granting Perez a writ of habeas corpus alleging a *Chiu* error. Section 1172.6 (f) makes clear that: "This section does not diminish or abrogate any rights or remedies otherwise available to the petitioner."

(B) The trial court properly vacated Perez's gang offense, as well as the gang-related allegations because the ameliorative changes to section 186.22 applied retroactively when the court vacated Perez's convictions.

(C) The trial court properly dismissed the first degree murder charge, the premeditated allegation as to the attempted murder charge, the substantive gang charge, and the gang-related allegations because the People did not bring those charges to retrial within 60 days (§ 1382), and the People did not request a stay of the trial court proceedings (§ 1506).

3

Thus, as to both appeals, we affirm the trial court's orders in all respects. When the matter returns to the jurisdiction of the trial court, Perez will stand convicted of second degree murder and attempted murder (without premeditation). Perez will likely file a section 1172.6 petition, but if not, the trial court may proceed with resentencing.

I.

FACTS AND PROCEDURAL BACKGROUND

On April 12, 1999, five gang members were together in an alley when two of them were shot. One person was killed, while the other was injured, but survived. A witness saw three young Hispanic males running away. Six years later, Perez was arrested. Perez admitted to police that he was with his fellow gang members when his two rival gang members were shot, but he claimed that he did not know that anyone would be killed. Perez was 18 years old at the time of the shooting.

In October 2005, the People filed an information charging Perez with premeditated murder (count one), attempted premeditated murder (count two), and gang participation (count three). As to counts one and two, the People alleged that the crimes were committed for the benefit of a criminal street gang. The People further alleged that as a gang member, Perez vicariously discharged a firearm.

In September 2006, the trial court instructed a jury on two theories of aider and abettor liability: direct aiding and abetting, and the natural and probable consequences theory. The jury found Perez guilty of first degree murder, attempted murder with premeditation, and the substantive gang offense. The jury found true the gang allegations and the

4

gang-related firearm allegations. The court imposed a total sentence of 50 years to life. This court affirmed the judgment on direct appeal.

In July 2022, Perez filed a section 1172.6 petition in the trial court. Perez averred he "could not be presently convicted of murder or attempted murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." The People filed a response, acknowledging that Perez had met the prima facie threshold for relief. The court issued an order to show cause. Perez then withdrew his section 1172.6 petition.

*The Petition for a Writ of Habeas Corpus*

On January 12, 2024, Perez filed a petition for a writ of habeas corpus (in propria persona). Perez asserted: "The conviction must be reversed and remanded for the People to determine whether to accept a second-degree conviction[], or retry me for a valid theory of first-degree murder." (See *Chiu, supra,* 59 Cal.4th at pp. 165–166.) Perez also averred that: "The record of conviction does not establish that the jury convicted me of attempted murder under a still valid legal theory. The premeditation allegation must be reversed and remanded for the People to determine whether to accept an attempted murder conviction, or retry me for a valid theory of attempted premeditated murder."

On January 29, 2024, the trial court ordered the People "to show cause why the requested relief sought in petitioner's petition for writ of habeas corpus should not be granted." The court appointed counsel.

On February 27, 2024, the People filed a return (an opposition) to the order to show cause. The People argued that Perez's petition should be summarily denied because section 1172.6 provides an adequate remedy at

5

law. The People further argued that the Supreme Court's holding in *Chiu, supra,* 59 Cal.4th 155, had been abrogated by the Legislature's passage of Senate Bill No. 1437 (Senate Bill 1437), which eliminated the natural and probable consequence theory of second degree murder. [2] (Stats. 2018, ch. 1015, § 1, subd. (b); §§ 188, 189.)

On April 26, 2024, Perez filed a traverse (a reply) to the People's return. Perez argued that habeas corpus relief based on a *Chiu* error is still permitted even after the Legislature's enactment of section 1172.6. (See *In re Cobbs* (2019) 41 Cal.App.5th 1073, 1081 (*Cobbs*) ["Since this habeas corpus action is not a resentencing petition under section [1172.6], . . . *Chiu* . . . governs"]; see also § 1172.6 (f) ["This section does not diminish or abrogate any rights or remedies otherwise available to the petitioner"].)

On May 17, 2024, the trial court filed a written order granting Perez habeas corpus relief. The court ordered that "petitioner's conviction on Count 1, for first-degree murder is ordered vacated. The premeditation allegation for petitioner's conviction on Count 2 is also ordered vacated." The court's order permitted "the People to accept a reduction of the conviction on Count 1 to second-degree murder and Count 2 to attempted murder. Alternatively, the People may elect to retry petitioner for first-degree murder and premeditated attempted murder under a valid theory. If the People accept the reduction of the conviction on Counts 1 and 2, then *all other true findings on the enhancements shall remain* and petitioner shall be resentenced accordingly." (Italics added.)

On June 12, 2024, Perez filed a motion in the trial court

---

[2] The People did not argue in their return, as they now argue in this appeal, that *Chiu, supra,* 59 Cal.4th 155, does not apply to an attempted murder conviction.

captioned: "Petitioner's motion to reconsider ruling that 'all other true findings on the enhancements shall remain' in light of *People v. Padilla* (2022) 13 Cal.5th 152 [(*Padilla*)]." (Capitalization & boldface omitted.) Perez argued that as to the gang crime and gang allegations he was "entitled to the ameliorative changes in the law." Perez stated that recent changes to section 186.22 "narrowed the application of the gang statutes and added several additional elements the prosecution must prove to obtain true findings on gang enhancements and convictions on substantive gang offenses." (See Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333).)

On June 18, 2024, the People filed an opposition to Perez's motion for reconsideration. The People argued that "the motion is premature. Contrary to petitioner's claim, this court did not vacate petitioner's sentence." The People argued that if they elected to retry Perez and the jury convicted him of first degree murder and found true the premeditation allegation as to the attempted murder, then Perez's "original sentence will remain and petitioner's motion to reconsider will be rendered moot." [3]

On June 21, 2024, Perez filed a reply to the opposition to the motion for reconsideration. Perez argued that the court's initial habeas corpus order vacated his first degree murder and attempted premeditated murder convictions. Perez argued that it did not matter whether the People elected to retry him on the charges, or elected to accept a reduction to second degree murder and attempted murder without premeditation and deliberation. Perez argued that in either case he should be entitled to the ameliorative changes to section 186.22.

[3] The People did not argue in their opposition, as they now do in this appeal, that Perez could not file a motion for reconsideration and needed to instead file a separate petition for a writ of habeas corpus.

On June 26, 2024, the trial court granted Perez's motion for reconsideration in a minute order: "The Court granted the petition for writ of habeas corpus on May 17, 2024. Pursuant to *People v. Padilla* (2022) 13 Cal.5th 152, the judgment is hereby reversed and petitioner's sentence is vacated. . . . Based on the Court's granting of the petition for writ of habeas corpus, vacatur of the judgment renders the case nonfinal with respect to all substantive offenses and enhancements. The People may elect to retry petitioner for first-degree murder, premeditated attempted murder, and all gang-related findings affected by AB333.[4] The People may also accept a reduction of the conviction on Count 1 to second-degree murder and Count 2 to attempted murder is so ordered."

On July 11, 2024, the People filed a notice of appeal (G064424) from the "May 17, 2024, order granting the petition for writ of habeas corpus, which order was further clarified on June 26, 2024."

*The Motion to Dismiss*

On August 28, 2024, Perez filed a motion to dismiss for a violation of his statutory speedy trial rights. Perez moved to dismiss all the charges against him because the People failed to retry him within 60 days. (See § 1382.) Perez argued that under *People v. Bilbrey* (2018) 25 Cal.App.5th 764 (*Bilbrey*), the People's "filing of a notice of appeal of this Court's order granting the petition for writ of habeas corpus did not toll the running of the

---

[4] We interpret the trial court's reference to "all gang-related findings affected by AB 333" as applying to the substantive gang conviction (§ 186.22 (a)), the gang allegations as to the murder and attempted murder charges (§ 186.22 (b)), and the gang-related firearm allegations as to the murder and attempted murder charges (§ 12022.53 (d) & (e)(1)).

60-day statutory time period to bring Mr. Perez-Tinoco to trial in the absence of a request for a stay pursuant to Penal Code section 1506[.]"

On September 19, 2024, the People filed an opposition. The People argued "that none of the charges should be dismissed because the order granting defendant's petition for writ of habeas corpus . . . should not have been granted. Nevertheless, . . . defendant's motion to dismiss should only be granted in part and denied in part." The People argued that if the trial court granted Perez's motion, "the first degree murder charge, the premeditation and deliberation allegation as to the attempted murder charge, and all gang-related findings affected by AB333 would only be dismissed because this Court only granted a new trial as to each." The People argued "this Court should deny defendant's motion as to the court-reduced second degree murder conviction and the attempted murder conviction."

On September 25, 2024, Perez filed a reply to the opposition to the motion to dismiss. Perez argued that the second degree murder and attempted murder convictions should also be dismissed because the trial court had vacated his murder and attempted murder convictions, and the fact that the court gave the People the alternative remedy "to '*accept* a reduction to second degree murder' is irrelevant in this case because the prosecution never accepted such a reduction."

On October 22, 2024, the trial court partially granted Perez's motion to dismiss in a minute order: "The People filed a notice of appeal on July 11, 2024, but did not seek a stay of proceedings in petitioner's underlying criminal case. The court finds that petitioner suffered a speedy trial violation because the People did not proceed with retrial or request a stay of execution of the court's habeas order pending final determination of

9

the issues in the Court of Appeal as required by Penal Code section 1506. Therefore, the first-degree murder allegation in Count 1, the premeditation allegation in Count 2, the Penal Code section 186.22(b)(1) enhancements in Counts 1 and 2, and Count 3 are hereby dismissed." [5] The court stayed the execution of its partial dismissal orders. [6]

On November 6, 2024, the People filed a second notice of appeal from the trial court's October 22, 2024, dismissal orders (G064859). This court has consolidated the two appeals. Perez filed a request for judicial notice of briefs filed by the Attorney General in other cases. The request for judicial notice is denied.

## II.

## DISCUSSION

The People claim the trial court erred: A) by granting Perez habeas corpus relief; B) by vacating the gang offense and gang allegations; and C) by granting a partial order of dismissal.

The People's claims on appeal each involve pure questions of law; therefore, we apply a de novo standard of review. (*In re Campbell* (2017) 11 Cal.App.5th 742, 753 ["'we review the grant of a writ of habeas corpus by applying . . . de novo review to questions of law'"].)

---

[5] Again, we interpret the trial court's dismissal orders as applying to all gang-related findings, meaning the substantive gang conviction (§ 186.22 (a)), the gang allegations as to the murder and attempted murder charges (§ 186.22 (b)), and the gang-related firearm allegations as to the murder and attempted murder charges (§ 12022.53 (d) & (e)(1)).

[6] The trial court's stay of its dismissal orders will dissolve upon the filing of the remittitur by this court. (See *People v. Superior Court* (*Mitchell*) (2024) 17 Cal.5th 228, 254.)

10

*A. The Trial Court Properly Granted Habeas Corpus Relief*

The People claim that Perez had an adequate remedy at law under section 1172.6 to challenge his murder and attempted murder convictions; therefore, the trial court should have summarily denied his petition for a writ of habeas corpus. We disagree.

In this part of the discussion, we shall: 1) review relevant legal principles; 2) analyze the law as applied to the facts; and 3) consider the arguments raised by the People.

*1. Relevant Legal Principles*

"A person unlawfully imprisoned or restrained of their liberty, under any pretense, may prosecute a writ of habeas corpus to inquire into the cause of the imprisonment or restraint." (§ 1473 (a).) "'"A habeas corpus petitioner bears the burden of establishing that the judgment under which he or she is restrained is invalid."'" (*In re Cox* (2003) 30 Cal.4th 974, 997.)

Generally, if a statute "provides an adequate remedy at law . . . , resort to a petition for a writ of habeas corpus is unnecessary, at least in the first instance." (*In re Cook* (2019) 7 Cal.5th 439, 447.) However, "'habeas corpus is an extraordinary remedy that "was not created for the purpose of defeating or embarrassing justice, but to promote it."'" (*In re Sanders* (1999) 21 Cal.4th 697, 721–722.)

In 2014, the Supreme Court held that "an aider and abettor may not be convicted of first degree *premeditated* murder under the natural and probable consequences doctrine. Rather, his or her liability for that crime must be based on direct aiding and abetting principles." (*Chiu, supra,* 59 Cal.4th at pp. 158–159.) "When a trial court instructs a jury on two theories

11

of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground." (*Id.* at p. 167.)

In *Chiu*, a jury convicted defendant of first degree murder after being instructed on the direct aiding and abetting theory, and the natural and probable consequence theory. (*Chiu, supra*, 59 Cal.4th at p. 158.) The Court found that reversal of defendant's first degree murder conviction was required. (*Id.* at p. 167.) The Court gave the People an option to retry the first degree murder charge under a valid theory (e.g., direct aiding and abetting), or to accept a reduction to second degree murder. (*Id.* at p. 168.)

After the Court's ruling*,* appellate courts uniformly held that similarly situated inmates can pursue *Chiu* relief in a petition for a writ of habeas corpus. (See, e.g., *In re Lopez* (2016) 246 Ca1.App.4th 350, 360.)

Effective January 1, 2019, through the enactment of Senate Bill 1437, the Legislature amended "'the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Ramirez* (2019) 41 Cal.App.5th 923, 927.)

The murder statutes now provide: "[I]n order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188 (a)(3).) "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was

12

the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life . . . ." (§ 189 (e).)

Senate Bill 1437 also created a procedural mechanism for those convicted of homicide crimes as aiders and abettors under now invalid legal theories to seek relief. (*People v. Strong* (2022) 13 Cal.5th 698, 717–718.) Under section 1172.6, a person convicted of murder, attempted murder, or manslaughter under the now defunct natural and probable consequences doctrine, or the former felony-murder rule, "may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts." (§ 1172.6 (a).) The Legislature further provided: "This section does not diminish or abrogate any rights or remedies otherwise available to the petitioner." (§ 1172.6 (f).)

A defendant may first file a habeas corpus petition seeking relief under the Supreme Court's holding in *Chiu,* and then may subsequently file a petition seeking relief under section 1172.6. (*Cobbs, supra,* 41 Cal.App.5th at p. 1081.) In *Cobbs*, defendant was convicted of first degree murder after the jury had been instructed on the natural and probable consequences doctrine. (*Id*. at pp. 1075–1076.) About 20 years later, the appellate court granted defendant habeas corpus relief, concluding his first degree murder conviction was no longer valid under *Chiu.* (*Id*. at p. 1079.)

The *Cobbs* court held that: "Since this habeas corpus action is not a resentencing petition under section [1172.6], Senate Bill 1437 is

13

inapplicable and *Chiu, supra*, 59 Cal.4th 155 governs. In accordance with *Chiu*, petitioner's first degree murder conviction is reversed, and the People have the option of either retrying petitioner for first degree murder or accepting a second degree murder conviction. If the People choose to retry defendant, then the . . . changes enacted by Senate Bill 1437 apply to any retrial. The trial court shall resentence petitioner as needed. If petitioner remains convicted of murder following the proceedings pursuant to this disposition, he can, where appropriate, file a resentencing petition under section [1172.6]." (*Cobbs, supra*, 41 Cal.App.5th at p. 1081.)

### 2. Application and Analysis

At Perez's trial in 2006, the jury had been instructed on the direct aider and abettor theory as well as the natural and probable consequences theory, both as to the first degree premeditated murder charge, and the attempted premeditated murder charge. Consistent with *Chiu*, we hold that the trial court properly granted Perez's petition for a writ of habeas corpus. (See *Chiu, supra,* 59 Cal.4th at p. 167 ["When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground"].) Further, just as in *Cobbs, supra*, 41 Cal.App.5th 1073, we find Perez was entitled to first seek habeas corpus relief under *Chiu,* and then seek an additional remedy under section 1172.6.

Our analysis is also consistent with the provision of section 1172.6 that provides: "This section does not diminish or abrogate any rights or remedies otherwise available to the petitioner." (§ 1172.6 (f).)

A virtually identical provision exists in the Three Strikes Reform

14

Act of 2012. (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012).) The legislation allows a defendant to file a petition in the trial court for relief from a third strike sentence. The law provides: "Nothing in this section is intended to diminish or abrogate any rights or remedies otherwise available to the defendant." (§ 1170.126 (k).) The California Supreme Court recently held that this provision "expressly indicates the voters did *not* intend for the petition process to be the sole avenue for defendants sentenced to an indeterminate term of imprisonment under the original Three Strikes law to seek resentencing relief." (*People v. Superior Court* (*Guevara*) (Cal., Oct. 9, 2025, S283305) 2025 WL 2860065, at p. *7.)

Thus, we affirm the habeas corpus orders of the trial court, which properly granted Perez the relief under *Chiu* that he requested.


### 3. The People's Arguments on Appeal

Disagreeing with the holding in *Cobbs*, *supra*, 41 Cal.App.5th 1073, the People argue that section 1172.6 provides a defendant convicted of first degree murder with an adequate remedy at law; therefore, the trial court improperly granted Perez habeas corpus relief. We disagree.

Unlike *Chiu*, section 1172.6 does not allow the reduction of a first degree murder conviction to a second degree murder conviction. "[U]nder section 1172.6, a trial court has two options in adjudicating a resentencing petition: Deny the petition and leave in place the murder conviction or grant the petition and vacate the murder conviction and resentence the defendant on the remaining charges or target offense or underlying felony. Reducing a first degree murder conviction to second degree murder is not an option under section 1172.6." (*People v. Gonzalez* (2023) 87 Cal.App.5th 869, 881.)

15

Here, in his habeas corpus petition, Perez sought reduction of his premeditated murder and attempted premeditated murder offenses, which are proper remedies under *Chiu*. That remedy is not available under section 1172.6; therefore, section 1172.6 is an inadequate remedy at law.

The People also argue that Perez's petition for a writ of habeas corpus asked the trial court to resentence him to a charge of second degree murder under the natural and probable consequences doctrine, which is no longer permitted under current homicide laws. (§§ 188, 189.) Based on this premise, the People argue that the court lacked jurisdiction to resentence him under a now invalid legal theory. We disagree.

As the trial court correctly stated in its habeas corpus order: "Reduction of the conviction to second-degree murder does not automatically mean that [Perez's] conviction is based on the natural and probable consequences theory, as he could have been convicted as [a direct] aider and abettor with either express or implied malice."

The People also primarily rely on three recent California Supreme Court opinions for the proposition that the appellate court's opinion in *Cobbs*, *supra*, 41 Cal.App.5th 1073, has been overruled. The People argue that the Supreme Court has subsequently "held that Senate Bill No. 1437 (2017–2018 Reg. Sess.) has superseded *Chiu* and Penal Code section 1172.6 is the 'exclusive mechanism' for retroactive relief." (See *People v. Gentile* (2020) 10 Cal.5th 830 (*Gentile*); *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*); *People v. Wilson* (2023) 14 Cal.5th 839 (*Wilson*).) We disagree.

In *Gentile*, a jury convicted defendant Gentile of murder after being instructed on the natural and probable consequences doctrine. (*Gentile*, *supra*, 10 Cal.5th at p. 841.) On direct appeal, the appellate court reversed

16

Gentile's first degree murder conviction under *Chiu,* and "remanded the case for the prosecution to decide whether to 'retry [Gentile] for the first degree murder under theories other than natural and probable consequences' or to accept reduction of Gentile's conviction to second degree murder." (*Ibid.*) "On remand, the prosecution elected to accept a reduction to second degree murder, and Gentile was sentenced to a prison term of 15 years to life." (*Ibid.*) The Legislature then enacted Senate Bill 1437. (*Gentile,* at p. 841.) *In a direct appeal* from his second degree murder conviction, Gentile argued that Senate Bill 1437 applied retroactively. In 2020, the Court disagreed, holding "that the Legislature intended section [1172.6] to be the exclusive avenue for retroactive relief under Senate Bill 1437." [7] (*Id.* at p. 853.) In the disposition, the Court affirmed "the second degree murder conviction without prejudice to any petition for relief that Gentile may file under section [1172.6]." (*Id.* at p. 860.)

Here, unlike *Gentile,* Perez was not pursuing relief under Senate Bill No. 1437 on direct appeal, or in a section 1172.6 petition. Indeed, Perez had withdrawn his section 1172.6 petition prior to filing his habeas corpus petition. Contrary to the People's argument, we find nothing in the Court's holding in *Gentile* that leads us to conclude that the Court's earlier holding in *Chiu* has been superseded to the extent that a defendant is prevented from

---

[7] The Legislature abrogated the Supreme Court's holding in *Gentile* the following year by adding subdivision (g) to section 1172.6, which permits a defendant to raise the ameliorative changes to sections 188 and 189 on direct appeal. (See § 1172.6 (g) ["A person convicted of murder, attempted murder, or manslaughter whose conviction is not final may challenge on direct appeal the validity of that conviction based on the changes made to Sections 188 and 189 by Senate Bill 1437"].)

pursuing habeas corpus relief alleging an error under *Chiu*. Indeed, in *Gentile*, it appears that the Supreme Court expressly recognized that a person could challenge a first degree murder conviction under *Chiu*, and then can later file a section 1172.6 petition challenging his reduced second degree murder conviction. (See *Gentile, supra*, 10 Cal.5th at p. 860 [the Court affirmed "the second degree murder conviction without prejudice to any petition for relief that Gentile may file under section [1172.6]"].)

In *Lewis*, a jury convicted defendant of first degree murder after being instructed on the natural and probable consequences doctrine. (*Lewis, supra*, 11 Cal.5th at pp. 958–959.) While his direct appeal was pending, the Supreme Court ruled in *Chiu* that the natural and probable consequences theory cannot extend to a first degree premeditated murder conviction. (*Lewis*, at pp. 958–959.) On appeal, the appellate court upheld defendant's conviction for first degree murder on a direct aider and abettor theory. (*Id.* at p. 959.) Years later, defendant filed a section 1172.6 petition, which the trial court denied without appointing counsel. (*Id.* at p. 960.) The Supreme Court granted review and in 2021 held "that the trial court erred by not appointing counsel, and [by] relying on the record of conviction to summarily deny [defendant's] petition." (*Ibid.*) In a footnote, while discussing the history of the case, the Supreme Court noted: "As we stated in *Gentile*, Senate Bill 1437 superseded *Chiu, supra,* 59 Cal.4th 155 <u>insofar as</u> *Chiu* upheld aider and abettor liability for second degree murder under the natural and probable consequences theory." (*Lewis*, at p. 959, fn. 3, underlining added.)

Again, in 2014, the Supreme Court held in *Chiu, supra*, 59 Cal.4th at pages 158–159, that the natural and probable consequences theory cannot support a first degree premeditated murder conviction. That is, the

18

Supreme Court impliedly held that the natural and probable consequences theory *could* still support a conviction for second degree murder. (*Ibid*.) It was not until January 1, 2019, through Senate Bill 1437, that the Legislature superseded that *portion* or aspect of the *Chiu* holding and determined that the natural and probable consequences theory also cannot support a second degree murder conviction. (See §§ 188, 189.) That is, we find no support for the People's argument in this appeal that the Supreme Court somehow stated in *Lewis* that Senate Bill 1437 *entirely* superseded *Chiu*. (See *Lewis*, *supra*, 11 Cal.5th at p. 959, fn. 3 ["As we stated in *Gentile*, Senate Bill 1437 superseded *Chiu*, *supra,* 59 Cal.4th 155 <u>insofar as</u> *Chiu* upheld aider and abettor liability for second degree murder under the natural and probable consequences theory"], underlining added.)

In *Wilson*, defendant was convicted of capital murder. (*Wilson*, *supra*, 14 Cal.5th at p. 844.) While defendant's appeal from his death penalty judgment was pending in the Supreme Court, defendant filed a supplemental brief asking the Court to vacate his murder conviction based on the ameliorative provisions of Senate Bill 1437. (*Wilson*, at p. 868.) In 2023, in explaining it could now reach the merits of defendant's arguments on direct appeal, the Court explained: "Because Senate Bill 1437 created this 'specific mechanism for retroactive application of its ameliorative provisions' [citation], we reasoned in *Gentile* that the section 1172.6 petition procedure was the *sole avenue through which those convicted under prior law could obtain relief*. We held that changes to the murder statutes enacted by Senate Bill 1437 did not apply to nonfinal convictions *on direct appeal*. [Citation.] The Legislature abrogated this holding the following year, however, by expressly authorizing challenges on appeal." (*Id*., at p. 869, italics added.)

19

Here, in their opening brief, the People quote the *Wilson* opinion only partially and state: "Penal Code section 1172.6 is the 'sole avenue through which those convicted under prior law [can] obtain relief.' (*People v. Wilson*, *supra*, 14 Cal.5th 839, 869.)"

But the People's citation to *Wilson* is arguably misleading as it is incomplete and lacks context. Again, we find nothing in the *Gentile*, *Lewis*, or *Wilson* opinions—or in any other opinion filed by the Supreme Court—that suggests that the Legislature's passage of Assembly Bill 1437, and its enactment of section 1172.6, have somehow superseded an inmate's ability to seek habeas corpus relief under *Chiu*, *supra*, 59 Cal.4th 155. (See *Cobbs, supra,* 41 Cal.App.5th at p. 1081 ["Since this habeas corpus action is not a resentencing petition under section 1170.95, . . . *Chiu* . . . governs"].)

Finally, the People also claim that the trial court erred by applying *Chiu* relief to Perez's conviction for attempted premediated murder. But this claim has been forfeited on appeal because it was not raised in the trial court within the People's return to the order to show cause. (See *People v. Duvall* (1995) 9 Cal.4th 464, 476 [the purpose of a return to an order to show cause in a habeas corpus proceeding is to assist the court in determining what material issues are truly disputed by parties].)

In the petition for a writ of habeas corpus, Perez asked for relief under *Chiu*, *supra*, 59 Cal.4th 155, as to both his premeditated murder and attempted premeditated murder convictions. In its return to the order to show cause, the People argued that Perez's petition for a writ of habeas corpus should be summarily denied because section 1172.6 provided an adequate remedy at law, and that the Supreme Court's holding in *Chiu* had been abrogated by the Legislature's passage of Senate Bill 1437. But in its

20

return, the People did not argue (as they do for the first time on appeal) that *Chiu* relief does not apply to a conviction for attempted premeditated murder.

Thus, the People's new claim on appeal regarding the propriety of *Chiu* relief as to Perez's attempted murder conviction has been forfeited. (See *People v. Mitchell* (2012) 209 Cal.App.4th 1364, 1370 ["a defendant's failure to present an issue to the trial court generally forfeits it on appeal"]; *In re Rothwell* (2008) 164 Cal.App.4th 160, 172, fn. 5 [in an original habeas corpus proceeding when "the return does not include any argument as to" an issue, "the contention is forfeited"]; Cal. Rules of Court, rule 4.551(e) ["Any material allegation of the petition not controverted by the return is deemed admitted for purposes of the proceeding"].) [8]

To reiterate and conclude, we affirm the habeas corpus orders of the trial court, which properly granted Perez relief under *Chiu*.

*B. The Court Properly Vacated all of the Gang-Related Findings*

The People argue that the trial court erred when it vacated Perez's substantive gang conviction, the gang enhancements, and the gang-related firearm enhancements. We disagree.

In this part of the discussion, we shall: 1) review relevant legal principles; 2) analyze the law as applied to the facts; and 3) consider the arguments raised by the People.

---

[8] In any event, if we were to address the People's argument regarding attempted murder on its merits, we would hold that *Chiu* relief extends to attempted premeditated murder convictions under current law. (See *People v. Ramos* (2024) 103 Cal.App.5th 460, 465 ["attempted murder under the natural and probable consequences doctrine no longer exists"].)

### 1. Relevant Legal Principles

In 2021, the Legislature amended section 186.22 with the passage of Assembly Bill 333. The Legislature significantly changed the elements of the substantive gang offense (§ 186.22 (a)), and gang enhancement (§ 186.22 (b)), by narrowing the definitions of "'criminal street gang,'" "pattern of criminal activity," and "what it means for an offense to have commonly benefitted a street gang." (*People v. Tran* (2022) 13 Cal.5th 1169, 1206 (*Tran*); see § 186.22.) These changes also significantly changed the elements of the gang-related firearm enhancements. (See § 12022.53 (e)(1) ["The enhancements provided in this section shall apply to any person who is a principal in the commission of an offense if . . . : [¶] (A) The person violated subdivision (b) of Section 186.22"].)

The prosecution must now prove that the predicate "offenses commonly benefited a criminal street gang" and that "the common benefit of the offenses is more than reputational." (§ 186.22 (e)(1).) The amended statute also provides: "The currently charged offense shall not be used to establish the pattern of criminal gang activity." (§ 186.22 (e)(2).)

Ordinarily, "a new statute is presumed to operate prospectively absent an express declaration of retrospectivity or a clear indication that the electorate, or the Legislature, intended otherwise." (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287.) However, the Supreme Court established an exception to the ordinary rule. (*In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).) Under the *Estrada* rule: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act." (*Id.* at p. 745.)

"It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Estrada, supra,* 63 Cal.2d at p. 745.)

In *Tran*, the Supreme Court held that Assembly Bill 333 applies retroactively to nonfinal judgments under the *Estrada* rule. (*Tran, supra*, 13 Cal.5th at p. 1207.) The Court reasoned that the changes to section 186.22 "have the effect of 'increas[ing] the threshold for conviction of the section 186.22 offense and the imposition of the enhancement,' with obvious benefit to defendants like Tran." (*Tran*, at p. 1207.)

In *Padilla*, the Supreme Court further held that the *Estrada* rule applies when a defendant's judgment is vacated during habeas corpus proceedings. (*Padilla, supra*, 13 Cal.5th. at pp. 158–159.) "A case is final when 'the criminal proceeding as a whole' has ended [citation] and 'the courts can no longer provide a remedy to a defendant on direct review.'" (*Id*. at p. 161.) The Court explained that when Padilla's sentence was vacated during a habeas corpus proceeding, "the trial court regained the jurisdiction and duty to consider what punishment was appropriate for him, and Padilla regained the right to appeal whatever new sentence was imposed." (*Id*. at pp. 161–162.) That is, Padilla's judgment "became nonfinal" and then "remain[ed] nonfinal . . . because the Court of Appeal ordered a second resentencing, from

23

which the Attorney General now appeals." (*Id.* at p. 162.)

A defendant is also entitled to the retroactive application of the ameliorative benefits of Assembly Bill 333 when a trial court *conditionally* reverses a defendant's judgment. (*In re A.M.* (2024) 102 Cal.App.5th 557, 569.) "Effective January 1, 2022, Assembly Bill 333 amended several of section 186.22's provisions. These amendments, as incorporated into the gang-murder special circumstance, retroactively apply to cases that are not yet final. [Citation.] As set forth above, *once the superior court conditionally reversed the judgment* in A.M.'s case, *his case was nonfinal.* Assembly Bill 333's amendments to the special circumstance therefore applied." (*Ibid.*, italics added; see also *People v. Trent* (2025) 112 Cal.App.5th 251, 260–261 [Assem. Bill 333 applies during § 1172.6 resentencing].)

### 2. Application and Analysis

Here, on May 17, 2024, the trial court filed its initial order granting Perez habeas corpus relief. The court vacated the murder conviction with premeditation, and vacated the premeditation allegation as to the attempted murder conviction. The court permitted the People to accept a reduction of the first degree murder conviction to second degree murder, and to accept a reduction of the premeditated attempted murder conviction to attempted murder without premeditation. In the alternative, the court gave the People an election to retry Perez for premeditated murder and premeditated attempted murder under a still valid theory. Consequently, the court's initial habeas corpus orders on May 17, 2024, simultaneously vacated Perez's judgment, and further acted as a conditional reversal.

On May 17, 2024, Perez's judgment became nonfinal; therefore,

24

by operation of law, Assembly Bill 333 applied retroactively to Perez's gang crime, the gang enhancement, and the gang-related firearm enhancements under the *Estrada* rule. (See *Padilla, supra,* 13 Cal.5th. at pp. 158–159 [a judgment becomes nonfinal when it is vacated during habeas corpus proceedings]; *In re A.M., supra,* 102 Cal.App.5th at p. 569 [Assem. Bill 333 applies retroactively when a judgment is conditionally reversed; "[a] judgment 'cannot be partially final and partially nonfinal'"].)

That is, as of May 17, 2024, Perez was entitled to a retrial of the substantive gang crime, the gang allegation, and gang-related firearm allegations under Assembly Bill 333. (See *People v. Lopez* (2025) 17 Cal.5th 388, 392–393 ["Because the judgment in this case was not final for *Estrada* purposes, Lopez was entitled to the retroactive application of Assembly Bill No. 333 . . . . Accordingly, we reverse the judgment below and remand for further proceedings consistent with this opinion"].)

Although the trial court's May 17, 2024, habeas corpus order mistakenly stated that "all other true findings on the enhancements shall remain," the court later prudently clarified its habeas corpus order on June 26, 2024, after Perez filed a motion for reconsideration:

"Petitioner's motion for reconsideration is granted. The court granted the petition for writ of habeas corpus on May 17, 2024. Pursuant to *People v. Padilla* (2022) 13 Cal.5th 152, the judgment is hereby reversed, and petitioner's sentence is vacated. 'When a habeas corpus court vacates a prior judgment and orders a new trial or new sentencing hearing, the prior judgment – [now] ineffective – can no longer be a final one.' [Citation.] Based on the Court's granting of the petition for writ of habeas corpus, vacatur of the judgment renders the case nonfinal with respect to all substantive

25

offenses and enhancements. The People may elect to retry petitioner for first-degree murder, premeditated attempted murder, and all gang-related findings affected by [Assembly Bill] 333. The People may also accept a reduction of the conviction on Count 1 to second-degree murder and Count 2 to attempted murder . . . ."

In short, we hold that the trial court's June 26, 2024, clarification of its habeas corpus order, which extended the ameliorative benefits of the Assembly Bill 333 to Perez's substantive gang conviction, the gang enhancements, and the gang-related firearm enhancements reflects a correct statement of the law. (See *Padilla, supra,* 13 Cal.5th 152.)

Thus, we affirm in full the habeas corpus orders of the trial court filed on May 17, 2024, and June 26, 2024.

### 3. The People's Arguments on Appeal

In this appeal, the People argue that rather than filing a motion for reconsideration in the trial court, Perez was obligated to file a separate petition for a writ of habeas corpus. But the People did not raise this procedural argument in the trial court (in their opposition to the motion for reconsideration), so it has been forfeited for purposes of appeal. (See *People v. Mitchell, supra,* 209 Cal.App.4th at p. 1370 ["a defendant's failure to present an issue to the trial court generally forfeits it on appeal"].)

The People also largely quote from *People v. Esquivias* (2024) 103 Cal.App.5th 969, review granted Oct. 2, 2024, S286371 (*Esquivias*), and argue that "'a trial court is *not* obligated to revisit a defendant's *entire* sentence on habeas review merely because it grants review to revisit a portion of that sentence.'" We disagree.

In *Esquivias*, *supra*, 103 Cal.App.5th 969, the trial court granted a petition for a writ of habeas corpus, finding defendant was eligible for retroactive relief under Senate Bill No. 620 (2017–2018 Reg. Sess.) (Senate Bill 620). Senate Bill 620 granted trial courts the discretion to dismiss what had formerly been mandatory firearm enhancements. In this case, the trial court granted defendant habeas corpus relief because the ameliorative legislation went into effect before the defendant's judgment became final. (*Esquivias*, at pp. 971–974.) The court struck the defendant's firearm enhancements; however, the court refused to conduct a full resentencing hearing, purporting to explain that it "lacked 'jurisdiction' to 'include every ameliorative change in law up to today's date.'" (*Id.* at p. 974.)

In *Esquivias*, the defendant appealed claiming he was entitled to a full resentencing hearing. (*Esquivias*, *supra*, 103 Cal.App.5th at p. 976.) The Court of Appeal disagreed, holding "that a trial court is *not* obligated to revisit a defendant's *entire* sentence on habeas corpus review merely because it grants review to revisit a portion of that sentence." (*Id.* at p. 976.) The appellate court reasoned: "A trial court has discretion in deciding how to exercise its habeas corpus jurisdiction and may limit a grant of habeas corpus review to a 'specific claim or claims' presented in a petition." (*Id.* at pp. 976–977.) The court found that the defendant's *sentence had not been vacated* or recalled but "remained intact and final except to the extent the trial court granted habeas corpus review of the firearm enhancements." (*Id.* at p. 980.)

Here, unlike *Esquivias*, the trial court more broadly exercised its habeas corpus discretion and, in fact, *vacated* Perez's sentence in its clarified June 26, 2024, habeas corpus order; therefore, we find the *Esquivias* opinion to be readily distinguishable on the relevant underlying facts. (See *Padilla,*

27

*supra,* 13 Cal.5th at p. 164 ["When a habeas corpus court vacates a prior judgment and orders a new trial or new sentencing hearing, the prior judgment – now ineffective – can no longer be a final one"].)

Moreover, we respectfully think that the Court of Appeal's analysis in *Esquivias* is likely to be rejected by the Supreme Court. (See *People v. McDavid* (2024) 15 Cal.5th 1015, 1023 ["A court acting while unaware of the full scope of its discretion is deemed to have abused it"].)

A reversal of *Esquivias, supra*, 103 Cal.App.5th 969, is particularly likely given the Court's numerous recent decisions that have broadly applied the effects of ameliorative legislation such as Assembly Bill 333. (See, e.g., *People v. Aguirre* (2025) 18 Cal.5th 629, 711 [error in failing to instruct jury based on retroactive change in law related to gang crimes and enhancements (Assem. Bill 333) amounted to prejudicial error]; *People v. Fletcher* (2025) 18 Cal.5th 576 [changes to gang offenses and enhancements (Assem. Bill 333) apply to determination of whether conviction qualifies as prior serious felony under "Three Strikes" law]; *People v. Faial* (2025) 18 Cal.5th 199 [law reducing length of probation for most felonies applied retroactively to defendant whose appeal from revocation of probation was pending]; *People v. Lopez, supra*, 17 Cal.5th at p. 393 ["Because the judgment in this case was not final for *Estrada* purposes, Lopez was entitled to the retroactive application of Assem. Bill No. 333"]; *Tran, supra*, 13 Cal.5th at pp. 1206–1207 [Assem. Bill 333's amendments to section 186.22 apply retroactively to cases pending on appeal].)

To reiterate and conclude, none of the People's arguments persuade us, and we affirm the habeas corpus orders of the trial court.

*C. The Trial Court Properly Granted Perez's Motion to Dismiss*

The People argue that the trial court erred when it partially granted Perez's motion to dismiss. We disagree because the People failed to bring the relevant charges and allegations to retrial within 60 days of the court's habeas corpus orders (§ 1382) and the People also failed to request a stay of the proceedings in the trial court (§ 1506).

The Legislature has set the statutory time limit on a retrial "after the issuance of a writ or order which, in effect, grants a new trial." (§ 1382 (a)(2).) Generally, absent good cause, the trial court must dismiss the action unless the defendant is brought to trial "within 60 days after notice of the writ or order is filed in the trial court and served upon the prosecuting attorney." (§ 1382 (a)(2).)

When an appeal is filed, a trial court ordinarily loses jurisdiction of the case. (*Portillo v. Superior Court* (1992) 10 Cal.App.4th 1829, 1832.) "Jurisdiction survives, however, where provided by statute." (*People v. Flores* (2003) 30 Cal.4th 1059, 1064.) "In such cases, the jurisdictional period generally is not tolled during the pendency of an appeal." (*Ibid.*)

"The prosecution's right to appeal in a criminal case is strictly limited by statute." (*People v. Chacon* (2007) 40 Cal.4th 558, 564.) Under section 1506, the People can appeal from the trial court's granting of a defendant's writ of habeas corpus. (*People v. Gallardo* (2000) 77 Cal.App.4th 971, 983 ["Although the People may appeal the granting of a writ of habeas corpus, the detainee has no right to appeal its denial and must instead file a new habeas corpus petition in the reviewing court"].)

The statute provides: "An appeal may be taken to the court of appeal by the people from a final order of a superior court made upon the

return of a writ of habeas corpus discharging a defendant or otherwise granting all or any part of the relief sought . . . . If the order grants relief other than a discharge or release from custody, the trial court or the court in which the appeal . . . is pending . . . *may, upon application by the people*, in its discretion, and upon such conditions as it deems just stay the execution of the order pending final determination of the matter." (§ 1506, italics added.)

In *Bilbrey*, a jury found defendant Bilbrey guilty of attempted murder, aggravated mayhem, assault with a deadly weapon, and battery with serious bodily injury. (*Bilbrey*, *supra*, 25 Cal.App.5th at p. 767.) The trial court imposed a life sentence, and the judgment was affirmed on appeal. (*Id*. at pp. 767–768.) Bilbrey later filed a petition for a writ of habeas corpus in the trial court alleging ineffective assistance of his trial counsel (IAC). The court granted the petition and ordered a new trial. The People filed a notice of appeal (Appeal #1). But the People did not bring the case to retrial, nor did they seek a stay of the trial court proceedings (§ 1506). (*Bilbrey,* at p. 768.)

Bilbrey then filed a motion to dismiss in the trial court based on the People's statutory speedy trial violation. (*Bilbrey*, *supra*, 25 Cal.App.5th at p. 768.) The People opposed, arguing that the pending appeal (Appeal #1) deprived the trial court of jurisdiction to rule on the motion. The trial court disagreed and granted the motion. The People then filed another appeal from the dismissal orders (Appeal #2). The Court of Appeal consolidated the two appeals "for purposes of oral argument and decision." (*Ibid*.)

The *Bilbrey* court noted the general rule that "''''[t]he filing of a valid notice of appeal vests jurisdiction of the cause in the appellate court until determination of the appeal and *issuance of the remittitur*" [citation], thereby divesting the trial court of jurisdiction over anything affecting the

judgment."'"'" (*Bilbrey, supra,* 25 Cal.App.5th at p. 771.) However, the court noted that the People's right to appeal from a trial court's granting of an inmate's petition for a writ of habeas corpus is governed by section 1506. (*Id.* at pp. 772–774.) Under that statute, the trial court or the appellate court "may, upon application by the people, in its discretion, and upon such conditions as it deems just stay the execution of the order pending final determination of the matter." (§ 1506.) Thus, the court held that an inmate "who is granted partial relief—something short of release or discharge—may benefit from execution of the favorable [habeas] order pending the People's appeal *unless* the trial or appellate court exercises its discretion to grant a stay requested by the People." (*Bilbrey*, at p. 774.)

In *Bilbrey*, the People also argued that even though they had not requested a stay of the trial court proceedings under section 1506, the pendency of Appeal #1 constituted "good cause" under section 1382 for extending the 60-day deadline. (*Bilbrey, supra*, 25 Cal.App.5th at p. 781.) The Court of Appeal squarely rejected that argument noting that "delay arising from unforeseen circumstances, such as the unexpected illness or unavailability of counsel or witnesses constitutes good cause to avoid dismissal. Delay attributable to the fault of the prosecution, on the other hand, does not constitute good cause." (*Ibid.*)

The Court of Appeal in *Bilbrey* held that the trial court had jurisdiction to rule on the defendant's motion to dismiss, but the court affirmed the trial court's dismissal orders only in part. (*Bilbrey, supra*, 25 Cal.App.5th at pp. 781–782.) The court held as to Appeal #1, that the trial court properly granted Bilbrey's petition for writ of habeas corpus alleging IAC as to his attempted murder conviction, but not as to the other charges.

31

(*Ibid.*) That is, the court "concluded Bilbrey was entitled to a new trial only as to" the attempted murder conviction. (*Id*. at p. 782.) Accordingly, as to Appeal #2, "only the attempted murder count warranted dismissal under section 1382, and the trial court erred in dismissing the other charges." (*Ibid.*)

Here, the People concede that under section 1560, they did not seek or request a stay of the proceedings in the trial court. The People further concede that under section 1382, they did not within 60 days bring the charges and allegations that were to be retried to trial (the first degree murder charge, the attempted premeditated murder charge, the substantive gang charge, the gang allegations, and the gang-related firearm allegations).

However, similar to the situation in *Bilbrey*, the People argue that the trial court improperly granted Perez's motion to dismiss because the trial court improperly granted Perez's petition for a writ of habeas corpus. In this opinion, we have rejected the People's challenges to the court's habeas corpus orders in full; therefore, we similarly reject the People's arguments concerning the propriety of the trial court's dismissal orders.

Thus, we affirm the trial court's dismissal orders in their entirety. When this matter returns to the jurisdiction of the trial court, only Perez's convictions for second degree murder and attempted murder (without premeditation) will remain. At that point, Perez will likely file a section 1172.6 petition for vacatur and resentencing, which he is permitted to do. (See *Cobbs, supra,* 41 Cal.App.5th at p. 1081.) But if not, the trial court can proceed with resentencing on Perez's remaining convictions for second degree murder and attempted murder (without premeditation).

Perez argues in this appeal that the trial court should have also dismissed his convictions for second degree murder and attempted murder

(without premeditation). We disagree.

As we have discussed, the trial court's habeas corpus orders were proper under *Chiu*, *supra*, 59 Cal.4th 155, as well as Assembly Bill 333. Again, the court's habeas corpus orders gave the People option of retrying the first degree premeditated murder conviction, the attempted murder with premeditation, and all the gang-related findings affected by the retroactivity of Assembly Bill 333 (the substantive gang conviction, the gang enhancements, and the gang-related firearm enhancements).

The People failed to bring the above listed charges and enhancements to a retrial within 60 days, so the trial court properly dismissed only those specific charges and enhancements. The court intended to leave Perez's second degree murder conviction and attempted murder conviction (without premeditation) in place if the People elected not to retry Perez, and that is precisely the result that has occurred.

Perez argues that the trial court's habeas corpus orders gave the People the option to *accept* a reduction to second degree murder and attempted murder without a premeditation. Based on this, Perez argues that the People never made a formal *acceptance*, and simply allowed the statutory time period to expire. But we find this to be a rather facile argument. By allowing the 60-day time period to expire, the People did, in fact, *accept* a reduction to second degree murder and to attempted murder without a premeditation enhancement (albeit apparently not intentionally).

We also asked the parties to address in supplemental briefs whether this court's hypothetical affirmance of the trial court's dismissal orders would render moot the People's appeal from the trial court's earlier habeas orders. (*People v. Rish* (2008) 163 Cal.App.4th 1370, 1380 ["'[A] case

becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief"].) We find that this court's affirmance of the trial court's dismissal orders does *not* render moot the People's appeal from the earlier habeas orders. Had this court reversed the habeas corpus orders, then that ruling may have had the practical effect of reinstating some or all of the dismissed charges. (See *Bilbrey*, *supra*, 25 Cal.App.5th at p. 782 [appellate court reinstated some of defendant's dismissed charges after partially reversing the earlier habeas corpus orders].)

To reiterate and conclude, we affirm the trial court's habeas corpus orders and the trial court's dismissal orders in full.

## III.

## DISPOSITION

The trial court's orders are affirmed.

MOORE, ACTING P. J.

WE CONCUR:

DELANEY, J.

BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.